IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOHNNY D. RUPE, ET AL. | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | CIVIL NO. 4:23-CV-998-P |
| | § | |
| THE CITY OF JACKSBORO, TEXAS, | § | |
| ET AL., | § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS

Pending before the Court are the following two motions: (1) Defendant Michael R. Smith[1] ("Smith")'s Motion to Dismiss Second Amended Complaint [doc. 41], filed February 26, 2024, and (2) Defendant City of Jacksboro's Motion to Dismiss Second Amended Complaint [doc. 42], also filed February 26, 2024. Having carefully considered the motions, responses, replies, and relevant law, the Court **RECOMMENDS** that both motions be **GRANTED** for the reasons set forth below.

### I.    BACKGROUND

*Pro se* Plaintiffs Johnny D. Rupe ("Mr. Rupe") and Sherry J. Rupe ("Mrs. Rupe") filed a twenty-one-page Second Amended Complaint alleging claims against Defendants for damages allegedly incurred after Mr. Rupe, on September 22, 2023, severed the electrical service line providing power to Plaintiffs' home while Mr. Rupe was trimming trees on Plaintiffs' property. (Plaintiffs' Second Amended Complaint ("Pls.' Sec. Am. Compl.") at 2.) Plaintiffs' claim that

---

[1] Michael R. Smith is the City Manager of the City of Jacksboro. According to City of Jacksboro Ordinance § 2.03.062(a), the city manager is appointed by the city council.

1

Mr. Rupe "cut the power line for safety[,]" "repaired the damage[,] and requested Oncor to return service to their residence." (*Id.*) Plaintiffs further allege:

> Mr. Rupe had every right to repair this damage pursuant to being an "exemption" in state law and "otherwise exempted" by city ordinance and the fact that repairs are not listed in § 4.03.004 "Applicability" in the City's municipal ordinances a requirement per Texas State statute. Oncor could not reconnect the power due to a contract between the City of Jacksboro and Oncor requiring a permit and an inspection by the City of Jacksboro's building inspector. . . .
>
> . . . .
>
> The City of Jacksboro has refused to acknowledge or understand there are two classes of Citizens that The City and Michael R. Smith are trying to govern with its municipal ordinances. Once class is those who are an "exemption" Texas OCC§ 1305.033(a)(6) and "otherwise exempted" under . . . § 4.03.012 (exempted class). The second class of Citizens are all of those who do not qualify as an exemption or otherwise exempted (non-exempted class). The City of Jacksboro only passed municipal ordinance that address the "non-exempted class" of Citizens and force fit the municipal ordinance to everyone whether the municipal ordinances apply to the "exempted class" or not. This "exempted class" of Citizens have special rights of being allowed to work on a home in which that they both own and live. . . .

(Pls. Sec. Am. Compl. at 2-3 (mistakes in original).)

Plaintiffs' main point of contention appears to be that Defendants did not recognize an exemption in the Texas statutes, which allows Plaintiffs to make electrical repairs to their own house. (*See generally* Plaintiffs' Original Complaint ("Pls.' Orig. Compl.") at 2-6.)[2] Instead, Defendants forced Plaintiffs to hire a master electrician to inspect Mr. Rupe's work and sign an application for a building permit before the City of Jacksboro would inspect the work and approve electricity being reconnected by Oncor. (*Id.*) Plaintiffs' allege that as a result of the City of Jacksboro's actions, they were without electricity from approximately 2:30 p.m. on

---

[2] While a practice generally not condoned by the Court, the Court will also consider the claims raised by Plaintiffs in their Original Complaint and First Amended Complaint because Plaintiffs incorporated by reference these earlier claims in Plaintiffs' Second Amended Complaint. (*See* Pls.' Sec. Am. Compl. at 1.)

Friday, September 22, 2023, to approximately 12:00 p.m. on Monday, September 25, 2024, and suffered damages "from undue stress, cost, excessive worry, panic, having to deal with the extreme heat in a home with no ventilation or air conditioning, loss of the foods in the refrigerators, loss of dignity and loss of respect." (Pls.' Orig. Compl. at 7 (mistakes on original).)

While far from clear, it appears that Plaintiffs are asserting the following claims against Defendant Smith (in his personal (or individual) capacity) and Defendant City of Jacksboro:[3] (1) elderly abuse in violation of Texas Human Resources Code § 102.003(b)(2) and 42 U.S.C. § 3058i; (2) violation of the Eighth Amendment of the Constitution prohibiting cruel and unusual punishment; (3) violation of the Ninth and Tenth Amendments; (4) fraud, blackmail, and extortion; (5) municipal liability against Defendant City of Jacksboro because Defendants lack jurisdiction as the City's ordinances are void for vagueness;[4] (6) violation of Plaintiffs' right to contract; (7) violation of the Fifth and Fourteenth Amendments' due process clauses; (8) violation of Texas House Bill ("HB") 2127, which became effective on September 1, 2023; and (9) punitive damages. (*See generally* Pls.' Sec. Am. Compl. at 1-19 (which incorporates by reference Plaintiffs' Original Complaint ("Pls.' Orig. Compl.") and Plaintiffs' First Amended Complaint ("Pls.' First Am. Compl.")); *see also* Plaintiffs' First Am. Compl. at 1-9; Plaintiff's Orig. Compl. at 1-24.)

---

[3] Plaintiffs' claims for the alleged federal constitutional and statutory violations are brought pursuant to 42 U.S.C. § 1983. (*See* Pls.' Sec. Am. Compl. at 15.)

[4] While unclear, it appears that Plaintiffs may also be asserting a failure to properly train claim against the City as Plaintiffs complain about Defendant Smith's failure to have an emergency plan in place to deal with situations that arise like in the Rupes' case. (*See* Pls.' Sec. Am. Compl. at 12; *see also* Pls.' Compl. at 6 ("Defendant failed to adopt clear policies and failed to properly train its staff as to their proper role of how to handle an emergency situation where a citizen is being deprived of electrical power for lack of an inspection.").

In its motion to dismiss, Defendant City of Jacksboro argues that all claims against it should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) because Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted. (Defendant City of Jacksboro's Motion to Dismiss Second Amended Complaint ("Def. City of Jacksboro's Mot.") at 1-31.)  In his motion to dismiss, Defendant Smith claims that he is entitled to qualified immunity as to all claims asserted against him and/or Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted.  ("Def. Smith's Mot.") at 13-29.)

## II.  LEGAL STANDARD

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  *Id.*  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions).  The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.  *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are

4

true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).[5] In addition, the Court may consider a "written document that is attached to a complaint as an exhibit" as well as "documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Tex. Health and Hum. Servs. Comm. v. U.S.*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (citations and internal quotation marks omitted).

Plaintiffs seek relief in this case under 42 U.S.C. § 1983, which "creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)). "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates. Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations and internal quotation marks omitted) (quoting *Johnson v. Harris Cnty., Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). "To state a section 1983

---

[5] The Court notes that it "can take judicial notice of city ordinances" in deciding a motion to dismiss. *Griffin v. City of Sugar Land, Tex.*, No. H-18-3121, 2019 WL 175098, at *2 (S.D. Tex. Jan. 11, 2019).

claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

## III.    LEGAL ANALYSIS

### A.    Claims Against Defendant Smith in His Official Capacity

As an initial matter, it appears that Plaintiffs are only suing Defendant Smith in his personal or individual capacity. However, to the extent that Plaintiffs are suing Defendant Smith in his official capacity, section 1983 claims against a person in his official capacity are duplicative with the claims against the municipality and, therefore, are properly dismissed. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was . . . correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves.") Consequently, the Court finds and concludes that, to the extent Plaintiffs are seeking relief from Defendant Smith in his official capacity, such claims should be **DISMISSED** and Defendants' motions to dismiss as to this issue should be **GRANTED**.

### B.    Elderly Abuse Claims

Plaintiffs assert claims for elderly abuse against Defendants pursuant to 42 U.S.C. § 3058i and Texas Human Resources Code § 102.003(b)(2). As to 42 U.S.C. § 3058i, which is a section under the Older Americans Act, 42 U.S.C. § 3001 *et seq.*, this statute does not afford a private cause of action to individuals like Plaintiff. *See James Roa v. City of Denison*, No. 4:18-

6

CV-168-ALM-CAN, 2019 WL 1306212, at *25 (E.D. Tex. Feb. 18, 2019) ("[C]ourts have found that the Older Americans Act does not create individual rights enforceable under Section 1983."); *Adams v. Royal Park Nursing and Rehab.*, No. 3:20-cv-00634-RJC-DSC, 2021 WL 4462914, at *3 (W.D.N.C. Sept. 29, 2021) (finding that 42 U.S.C. § 3058i does not provide the court with subject-matter jurisdiction as it does not confer a private right of action); *Sienze v. Madera Cnty. Sheriff's Off.*, No. 1:17-cv-00736-AWI-SAB, 2017 WL 2423672, at *7 (E.D. Cal. June 5, 2017) ("The Court finds that Congress did not intend to create a private right of action under section 3058i.")  Accordingly, Defendants' motions to dismiss should be **GRANTED** as to Plaintiffs' section 3058i claim.

Plaintiffs also bring a claim for elderly abuse against Defendants under section 102.003(b)(2), title 6, of the Texas Human Resources Code, which states that, as relevant here, an "elderly individual . . . has the right to be free from abuse, neglect, and exploitation."  Tex. Hum. Res. Code Ann. § 102.003(b)(2).  Section 102.003(b)(2) falls under title 6 of the Human Resources Code, which deals with "Services for the Elderly" and chapter 102, which sets forth the "Rights of the Elderly."   Section 102.002(a) states that "[a] person providing services to the elderly may not deny an elderly individual a right guaranteed by this chapter."  Tex. Hum. Res. Code. Ann. § 102.002(a).  Section 102.001, which contains the definitions for title six of the Human Resources Code, defines "person providing services" as an "individual, corporation, association, partnership, or other private or public entity providing convalescent and nursing home services, home health services, or alternate care services."  Tex. Hum. Res. Code Ann. § 102.001(4); *see also Charles v. Exeter Fin. Corp.*, No. 4:16-CV-03480, 2017 WL 6888852, at *3 (S.D. Tex. Dec. 20, 2017).  In this case, Plaintiffs do not make any allegations in any of their complaints that Defendants, a municipality and a person employed by such municipality, provide

7

any of the above-listed services. Based on the foregoing, the Court finds and concludes that Plaintiffs have also failed to state a claim against Defendants for elder abuse under section 102.003(b)(2) and, accordingly, Defendants' motions on these claims should be **GRANTED**.

      C.    **Eighth Amendment Claim**

Plaintiffs further claim that, in violation of the Eighth Amendment of the U.S. Constitution, Defendants inflicted "cruel and unusual punishment by failing to allow access to utilities until arbitrary conditions are met by the citizens in times of an emergency without any immediate remedy." (Pls.' Orig. Compl. at 7-8.) However, the Eighth Amendment "prohibition against cruel or unusual punishment is not applicable to cases in which the plaintiffs were not in custody" at the time of the events giving rise to the suit. *Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987); *see Martin v. Busby*, No. 2:22-CV-00181, 2022 WL 4292969, at *3 (S.D. Tex. Aug. 18, 2022) ("Plaintiff, however, was not in custody at the time of the assaults, thus the Eighth Amendment is not implicated."). Consequently, the Court finds and concludes that Plaintiffs have failed to state a claim under the Eighth Amendment and Defendants' motions to dismiss on this claim should be **GRANTED**.

      D.    **Ninth and Tenth Amendment Claims**

Next, Plaintiffs also bring claims against Defendants pursuant to the Ninth and Tenth Amendments of the U.S. Constitution. (*See, e.g.*, Pls.' Sec. Am. Compl. at 9, 15-19; Pls.' Orig. Compl. at 8.) However, the Ninth and Tenth Amendments do not confer substantive rights upon which civil rights claims may be based. *See Johnson v. Tex. Bd. Of Crim. Justice*, 281 F. App'x 319, 320 (5th Cir. 2008) ("The Ninth Amendment does not confer substantive rights upon which civil rights claims may be based."); *Jennings v. Clay*, No. 2:13-CV-0015, 2013 WL 3388403, at *4 (N.D. Tex. July 8, 2013) (citations omitted) (stating that the "Ninth Amendment does not

confer any specific constitutional guarantee," and "[n]o cause of action exists based upon its violation" as it "is a residual clause, which is intended to be used as a rule of construction in interpreting other constitutional rights"); *Said v. Wray*, No. A-21-CV-00869-RP, 2022 WL 22269657, at *3 (W.D. Tex. Apr. 18, 2022); *Assoc. of Am. Physicians & Surgeons, Inc. v. U.S. Dept. of Health and Hum. Servs.*, 224 F. Supp. 2d 1115, 1126 (S.D Tex. June 17, 2002) ("[T]he Fifth Circuit has affirmed a well-reasoned district court ruling that individual plaintiffs lack standing to sue under the Tenth Amendment") (citing *Gaubert v. Denton*, 210 F.3d 368 (5th Cir. 2000). Consequently, the Court finds and concludes that Plaintiffs have failed to state a claim under the Ninth and Tenth Amendments and Defendants' motions to dismiss on these claims should be **GRANTED**.

E.    **Fraud, Blackmail, and Extortion Claims**

Plaintiffs also assert claims for fraud, extortion, and blackmail against Defendants for, *inter alia*, causing a homeowner who performs his own electrical repairs to have to "buy[ ] a permit through a licensed master electrician to have an inspection in order for the City to contact Oncor to connect the power." (Pls.' First Am. Compl. at 6; *see* Pls.' Sec. Am. Compl. at 20; *see* Pls.' First Am. Compl. at 2.)

As to Plaintiffs' claims for fraud against Defendant Smith in his personal capacity, section 101.106(e) of the TTCA states: "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Tex. Civ. Prac. & Rem. Code § 101.106(e). Plaintiffs' claims of fraud are within the scope of the TTCA and section 101.106(e). Thus, because Plaintiffs filed suit under the TTCA against both Defendant City of Jacksboro and Defendant Smith and motions to dismiss have been filed, in accordance with section 101.106(e),

the Court finds and concludes that the fraud claim against Defendant in his personal capacity should be dismissed. Consequently, Defendants' motions to dismiss on this issue should be **GRANTED**. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010).

While Texas does not recognize a civil cause of action for extortion or blackmail, Texas does recognize a civil cause of action for fraud, which is classified as an intentional tort.[6] *See, e.g.*, *Kennedy Ship & Repair, L.P. v. Loc Tran*, 256 F. Supp. 2d 678, 686 (S.D. Tex. Mar. 25, 2003) ("Without any authority supporting the proposition that Texas recognizes a civil cause of action for extortion, the Court is not obliged to do so now."); *Rader v. ShareBuilder Corp.*, 772 F. Supp. 2d 599, 606 (D. Del. 2011) ("Blackmail and extortion are, in almost all jurisdictions, crimes, not civil causes of action."); *Matthew Tanner v. Crossroads Row Grp.*, No. 4:23-CV-00044-ALM-AGD, 2024 WL 1340589, at *4 (E.D. Tex. Mar. 12, 2024) (finding that city was immune from liability for alleged fraud, which was an intentional tort, under the Texas Tort Claims Act). It is well-settled Texas law that any tort claim brought against a City must be pursued under the Texas Tort Claims Act ("TTCA"). *See Mission C.I.S.D. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008); *see also* Tex. Civ. Prac. & Rem. Code Chapter 101. "Under the doctrine of governmental immunity, a municipality is immune from tort liability from its own acts or the acts of its agents, unless the TTCA clearly and unambiguously waives immunity." *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex. 1998). The TTCA specifically provides that the waiver of immunity does not apply to a claim arising out of any intentional tort. *Rojero*

---

[6] Even if Texas did recognize civil causes of action for blackmail and extortion, the city would also be immune from suit for such claims as they would be classified as intentional torts for which a city's immunity is not waived under the TTCA.

*v. El Paso Cnty.*, 226 F. Supp. 3d 768, 775 (W.D. Tex. 2016) (citing Tex. Civ. Prac. & Rem. Code §§ 101.021, 101.057(2)).

Therefore, as the City of Jacksboro is immune from suit for intentional tort claims under the TTCA, the Court finds and concludes that Plaintiffs have failed to state a claim against Defendant City of Jacksboro for fraud and Defendant City of Jacksboro's motion to dismiss on this issue should be **GRANTED**. *See Rodgers v. City of Lancaster Police*, No. 3:13-CV-2031-M-BH, 2017 WL 457084, at *15 (N.D. Tex. Jan. 6, 2017) (stating that, because fraud is an intentional tort, the city is immune under the TTCA from Plaintiff's fraud claim).[7]

F.    **Void for Vagueness and Municipal Liability Claims**

Plaintiffs also argue that Defendants are liable for wrongly enforcing the City of Jacksboro City Ordinances against Plaintiffs as such ordinances are void for vagueness. (*See, e.g.*, Pls.' Sec. Am. Compl at 4-8; Pls.' First Am. Compl. at 2-5.) In support, Plaintiffs state:

> The City of Jacksboro's (The City) municipal ordinances under § 4.03 and how these ordinances are applied to the Plaintiffs being an exemption under Texas OCC§ 1305.003(a)(6) is the beginning of how The City violated the Plaintiffs' civil and Constitutional rights, violated both Texas State and Federal law and cause grievous damage to the Plaintiffs.
>
> . . . .
>
> Johnny D. Rupe and Sherry J. Rupe are both people that perform work in or on a dwelling which they own and reside and claim the exemption offered under Texas OCC§ 1305.003(a)(6).
>
> The City's municipal ordinance under § 4.03 are too vague to follow for an "exempt person", do not make any sense and are impossible to follow for a Texas Occupations Code § 1305.003 (a)(6) person who is exempt.  These ordinance fit very well for businesses, restaurants, schools, homeowners using an electrician, landlords, renters, and so on (None of the people in this list qualify as

---

[7] Moreover, even assuming Defendant City of Jacksboro was not immune from suit and Defendant Smith was not required to be dismissed as a Defendant, Plaintiffs have failed to meet the heightened pleading standard required in Federal Rule of Civil Procedure 9(b) for claims of fraud.

an "exemption" according to the Texas State statute, but the Rupes do.) but are impossible for one class, people exempted under Texas Occupations Code § 1305.003(a)(6) because there are no ordinances that address the exemption class. . . .

. . . .

. . . Thus The City has no jurisdiction for lack of a pertinent municipal ordinance.

The Plaintiffs' position is that these municipal ordinances are incoherent and incomprehensible for a Texas Occupations Code § 1305.003 (a)(6) person who is exempt and should be declared void for vagueness for such a person. Actually, The City's municipal ordinances are so vague because there are no municipal ordinances concerning an "exempt person". These municipal ordinances are just nonexistent.

. . . .

The Plaintiffs' position on these municipal ordinances is these municipal ordinances are void for vagueness or are void because they do not exist.. They void for vagueness is a legal principle that a statute is unenforceable if it is too vague for the average citizen to understand. This doctrine is based on the Due Process Clause of the Fifth Amendment of the United States Constitution, which prohibits the government from depriving any person of life, liberty, or property without due process of law. The Plaintiffs claim this right also exists if there is no law. The City's use of any ordinance that does not exist or is void for vagueness is an action under the color of law.

(Pls.' Sec. Am. Compl. at 4-5, 8 (mistakes in original).)

"The Fourteenth Amendment provides that '[n]o person shall . . . be deprived of life, liberty, or property without due process of law." *Babin v. Parish of Jefferson*, No. 16-2954, 2018 WL 794535, at \*5 (E.D. La. Feb. 8, 2018) (quoting U.S. Const. amend. XIV). "Vagueness doctrine is an outgrowth . . . of the Due Process Clause." *United States v. Williams*, 553 U.S. 285, 304 (2008). "It is a basic principle of due process than an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "A statute is unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Groome Res., Ltd. v. Parish of Jefferson*,

12

234 F.3d 192, 217 (5th Cir. 2000) (internal quotation marks and citations omitted). "In the civil context, the statute must be so vague and indefinite as really to be no rule at all." *Groome Resources, Ltd.*, 234 F.3d at 217 (internal quotation marks and citations omitted). "In determining whether a statute is unconstitutionally vague, courts look, *inter alia*, to whether the statute provide[s] definite standard for those who apply them." *Cortes v. City of Houston*, No. H-07-2744, 2007 WL 4376106, at *7 (S.D. Tex. Dec. 13, 2007) (internal quotation marks and citations omitted).

A plaintiff may establish municipal liability under section 1983 by proving a violation of constitutional rights by an action pursuant to official municipal policy or pursuant to misconduct so pervasive among non-policy-making employees of the municipality as to constitute a custom or usage with the force of law." *Monell v. Dept. of Soc. Servs.* 436 U.S. 658, 691; *see Turner v. Lieutenant Driver*, 846 F.3d 678, 685 (5th Cir. 2017) ("Accordingly, 'to state a claim under 42 U.S.C. 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law."). A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see Bryan Cnty.*, 520 U.S. at 403. "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694 (1978)). An "official policy" for purposes of section 1983 includes, as relevant in this case, an ordinance "that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated

policy-making authority." *Brown v. Bryan Cnty.. OK*, 219 F.3d 450, 457 (5th Cir. 2000) (internal quotation marks and citations omitted).  In addition to establishing that a policy exists, a plaintiff is required to show that the official policy is causally linked to the alleged constitutional violation and such policy must be the moving force behind the constitutional violation.  *See Lawson v. Dallas Cnty.*, 286 F.3d 257, 263 (5th Cir. 2002); *Piotrowski*, 237 F.3d at 579.  Finally, the official policy must reflect the municipality's deliberate indifference to the plaintiff's injury. *Lawson*, 286 F.3d at 264.

The business of electrical contracting in Texas is governed by the Texas Electrical Safety and Licensing Act ("Act"), codified in chapter 1305 of the Texas Occupations Code. *See Sw. Elec. Contracting Servs., Ltd. v. Indus. Accessories Co.*, No. MO:18-CV-00123-DC, 2022 WL 1468384, at *35 (W.D. Tex. May 10, 2022).  The Act generally prohibits a person or business from offering to perform electrical work without holding an appropriate license. *See* Tex. Occ. Code § 1305.151.  However, the Act also sets forth twenty-three separate exceptions or exemptions to the requirement of a license, including "work not specifically regulated by a municipal ordinance that is performed in or on a dwelling by a person who owns and resides in the dwelling." Tex. Occ. Code § 1305.003(a)(6).[8]

The City of Jacksboro has also passed ordinances regulating electrical work. *See generally* City of Jacksboro Code of Ordinances ("City Ordinances"), Chapter 4.  These electrical regulation ordinances "apply to any and all electric wiring hereafter installed in the city, including any and all additions and alterations to new or old wiring installed therein." City

---

[8] Chapter 1305 of the Texas Occupations Code was enacted in 2003 by House Bill 1487, which put electrical work regulation under the control of the Texas Department of Licensing and Regulation. *See* Op. Tex. Att'y Gen. No. GA-0292 (2005).  According to a January 11, 2005, attorney general opinion, "[b]efore passage of the Act, electrical work regulation in Texas was relegated to the state's political subdivisions, which resulted in varied electrical work rules throughout the state, and no regulation in some political subdivisions." *Id.*

Ordinance § 4.03.004. Section 4.03.012, which it titled "License required," states that a "person may not perform electrical work within the city unless the person holds the appropriate license and is not otherwise exempted under state law." *Id.* § 4.03.012. The City of Jacksboro also has an ordinance that requires "every person, firm or corporation doing any electrical wiring within the city to notify the building official when such work is ready for inspection, and before any of such work is concealed and while the same is still accessible, that such work is ready for inspection." City Ordinance § 4.03.016.

In this case, Plaintiffs have pled that, based on the language in both the state statute and the City of Jacksboro ordinances, it is not clear whether Plaintiffs needed a license to perform electrical work on their residence. Plaintiffs argue that, if they were able to perform the repair work themselves due to the exemption set forth in the Texas statute, then they should have been allowed to notify the City of the need for an inspection without having to hire a licensed electrician to verify Plaintiffs' electrical repair work.

The Court disagrees with Plaintiffs' interpretation and construction of the City of Jacksboro's ordinances and how such ordinances fit into the Texas electrical work regulatory scheme. As noted by Defendants, Defendant City of Jacksboro has passed ordinances that regulate electrical issues, including licensing and permitting. Under these ordinances, a license is required for every person, firm or corporation doing any electrical work within the city limits. The applicable licensing exemption set forth in section 1305.003(a) of the Texas Occupations Code simply does not apply in this case because electrical work in the City of Jacksboro ***is regulated by municipal ordinance***. By its plain language, section 1305.003(a) would only apply to citizens of cities that have not enacted their own electrical regulation ordinances. Consequently, Plaintiffs have failed to allege, *inter alia*, that that there was a violation of the

15

Constitution or federal law that was the cause of their injuries. As a result, the Court finds and concludes that Plaintiffs have failed to state a claim upon which relief can be granted and Defendants' motions on this issue should be **GRANTED**.

To the extent that Plaintiffs have also alleged a failure to properly train claim against Defendant City of Jacksboro, the Court notes that the "same standard applies both to a failure to train claim and to a municipal liability claim." *Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted) (To plead a plausible claim, [Plaintiff] must allege facts that enable the court to draw the reasonable inference that '(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training directly cause [Plaintiff's] injury.'"). As set forth above, as the Court does not find that the City's electrical regulation ordinances are unconstitutional; thus, Plaintiffs have failed to allege a constitutional violation.

Moreover, even assuming they had pled a constitutional violation, to succeed on a failure to train claim, "[t]he plaintiff[s] must show that the City's failure to train was deliberately indifferent to the constitutional rights of citizens." *Rountree v. City of Beaumont, Tex.*, No. 1:16-CV-26, 2017 WL 5640841, at *8 (E. D. Tex. Mar. 27, 2017) (citing *Cardenas v. Lee Cnty., Tex.*, 568 F. App'x 252, 257 (5th Cir. 2014) (per curiam). "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for failure to train." *Rountree*, 2017 WL 5640841, at *8. "Establishing deliberate indifference generally requires a showing that the municipality failed to change its training methods in the face of several incidents in which the training methods caused constitutional deprivations. *Id.*

In this case, Plaintiffs have failed to plead any factual allegations related to separate incidents in which others suffered constitutional deprivations due to the City's alleged failure to

properly train its employees. While Plaintiffs do reference a prior incident with Defendant Smith involving a sewer back up and a prior incident with the city finance officer and Defendant Smith over payment of Plaintiffs' water bill (*see* Pls.' Am. Compl. at 11-12), Plaintiffs, while unhappy with these incidents and the alleged treatment they received, do not allege that they suffered constitutional deprivations due to the City's alleged failure to properly train its employees in these incidents. In addition, "pleading the occurrence of only two prior incidents . . . is insufficient to permit the court reasonably to infer there was a pattern of violations such that the City Council can be said to have been deliberately indifferent to the need for additional training." *Pinedo*, 2015 WL 5021393, at *9. Thus, based on the foregoing, the Court finds and concludes that any failure to train claim must also be **DISMISSED**.

G.    **Right to Contract Claim**

Plaintiffs also claim, *inter alia*, that the "City violated the Plaintiffs right to contract by forcing the plaintiffs into a contract with Oncor to obtain both a permit and an inspection from The City." (Pls.' Sec. Am. Compl. at 8-9.) Plaintiffs further allege that they have "a right to <u>not</u> be forced into a contract with The City and Oncor and did so under duress." (Pls.' Sec. Am. Compl. at 9.) Plaintiffs claim that "[o]ne of the most important concepts used during the ascendancy of economic due process was liberty of contract" and that this doctrine was "used repeatedly during the early part of this century to strike down state and federal labor regulations." (Pls.' Sec. Am. Compl. at 17.) Plaintiff, citing to case law from the 1800s and early 1900s, states that the "liberty mentioned in that [Fourteenth] amendment means . . . [the right] to enter into all contract which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned." (Pls.' Sec. Am. Compl. at 17 (citations and internal quotation marks omitted).)

17

While the Supreme Court in the late 1800s did recognize that there was a "right of contract," such a right has always been "subject to certain limitations which the state may lawfully impose in the exercise of its police powers." *Holden v. Hardy*, 169 U.S. 366, 391 (1898). "The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of businesses may be prohibited; and the right to conduct a business, or to pursue a calling may be conditioned." *Nebbia v. New York*, 291 U.S. 502, 527-28 (1934) (footnotes omitted). "There is no positive federal right to contract at all times on all subjects, though individuals are generally free to contract in a manner and with objectives that do not violate local law, and this liberty may give rise to an interest protected by the Fourteenth Amendments' Due Process Clause." *Carrico v. Village of Sugar Mountain*, 114 F. Supp. 2d 422, 426 (W.D.N.C. 2000) (internal quotation marks and citations omitted)); *see Gray v. Am. Express Co.*, 743 F.2d 10, 17 (D.C. Cir. 1984) ("Absent a statutory prohibition or some public policy impediment . . . the very essence of freedom of contract is the right of the parties to strike good bargains and bad bargains.")

"The enactment of statutes, or rules and regulations promulgated under authority of statute, invariably involve a modification of existing private rights and privileges of at least some persons." *Pyeatte v. Bd. of Regents of Univ. of Okl.*, 102 F. Supp. 407, 412 (1951). "The due process clause does not prevent extensive governmental control of private interests for the protection and welfare of the public at large." *Id.* "It is quite impossible to draw a distinct line between the permissible and the prohibited forms of regulation to which the due process clause applies and in the final analysis of judicial construction of constitutional provisions, it becomes necessary to weigh the individual interests against the social desirability of governmental control or regulations which may or do affect those interests." *Id.* "A general rule has developed for

18

reconciling the claims of government to regulate, and those of private interests to freedom from regulations, as pertaining to due process, and this is that due process is a guarantee only against unreasonable and arbitrary legislative or other governmental control." *Id.*

In this case, Plaintiffs do not have a substantive constitutional right to make contracts that violate valid municipal ordinances. *See Carrico*, 114 F. Supp. 2d at 426 ("Plaintiffs' contracts to build the projects at issue violated state law because they lacked the appropriate licenses.") As set forth above, the Court has found that Defendant City of Jacksboro's ordinances requiring a license to perform electrical work in Jacksboro are valid. Consequently, the Court finds and concludes that Plaintiffs have failed to state a valid claim for breach of a right to contract against Defendants, and Defendants' motions to dismiss on this claim should be **GRANTED**.

H.    **Substantive Due Process Claim under the Fifth and Fourteenth Amendments**

Plaintiffs also bring claims under the Fifth and Fourteenth Amendments against Defendants for depriving Plaintiffs of life, liberty, and property without due process of law for forcing Plaintiffs to comply with municipal ordinances that are void for vagueness. (*See, e.g.*, Pls.' Sec. Am. Compl. at 8-9, 14-16.) As to the Fifth Amendment, the Court notes that the due process clause of the Fifth Amendment is only applicable to actions taken by the federal government. *See Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("[T]he Fifth Amendment applies only to the actions of federal government, and not to the actions of a municipal government as in the present case.") (citing *Richard v. Hinson*, 70 F.3d 415, 416 (5th Cir. 1995)). As Plaintiffs have made no allegations that either Defendant is a part of or employed by the federal government, the Court finds and concludes Plaintiffs have failed to state a substantive due process claim under the Fifth Amendment against Defendants and Defendants' motion on this issue should be **GRANTED.**

19

As to Plaintiffs' claims under the Fourteenth Amendment against Defendant City of Jacksboro, the Court notes that the Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive a person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "The Fourteenth Amendment guarantees [s]ubstantive due process[, which] prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Rogers v. Lee Cnty., Miss.*, 684 F. App'x 380, 390 (5th Cir. 2017) (internal quotations marks and citations omitted). "A substantive due process claim requires a plaintiff to show that the challenged government action is arbitrary, unreasonable, or has no relationship to a legitimate government interest." *Gatehouse Water LLC v. Lost Pines Groundwater Conservation Dist.*, No. A-22-CV-00132-LY, 2022 WL 3362287, at *9 (W.D. Tex. Aug. 15, 2022).

Plaintiffs "may prevail on [their] due process claim only if [they are] able to show that the defendants intentionally or knowingly" deprived Plaintiffs of life, liberty or property and "that their actions shock the conscience." *Rogers*, 684 F. App'x. at 390. "Conduct that shocks the conscience has been described . . . as conduct that violates the decencies of civilized conduct; conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency; conduct that interferes with rights implicit in the concept of ordered liberty; and conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Sterling v. City of Jackson, Miss.*, No. 3:22-CV-531-KHJ-MTP, 2024 WL 420884, at *5 (S.D. Miss. Feb. 5, 2024) (internal quotation marks and citations omitted).

In this case, Plaintiffs claim that Defendant City of Jacksboro violated their substantive due process by forcing Defendant to comply with a municipal ordinance that is either nonexistent

or void for vagueness. As noted above, the Court has found that the City of Jacksboro's ordinances are valid. Thus, Plaintiffs have failed to allege a life, liberty, or property interest to which the Fourth Amendment's due process protection applies.

Moreover, even if the City of Jacksboro's ordinances were not valid, the Court finds and concludes that Defendants' conduct in this case, as alleged by Plaintiffs, is not the type of conduct that is so egregious and conscience shocking to form the basis of a substantive due process claim. Defendants' alleged conduct in enforcing ordinances regulating electrical work, which were passed to protect the safety of the community and do not appear to have been challenged before now, does not meet or satisfy the conscience-shocking standard. *See Maryland Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 407 (S.D. Tex. 2011) ("The City does not violate due process merely because it acts in a manner not authorized by an ordinance.").[9] The Rupes are upset that, after being responsible for damaging the electrical wires to their home, they were without electricity from approximately 2:30 p.m. on Friday, September 22, 2023, to approximately 12:00 p.m. on Monday, September 25, 2024. While being without electricity in September in Texas can be extremely hot and uncomfortable, the City's actions of getting the Rupes' home inspected and approved so that electricity could be turned back on in a period of three days, which included a weekend, is certainly not conscience shocking. Consequently, the Court finds and concludes that Plaintiffs have failed to state a Fourteenth

---

[9] The Court notes that courts have also applied a rational basis review to due process challenges as well as the shock the conscience standard set forth above. *See Reyes v. North Texas Tollway Authority, (NTTA)*, 861 F.3d 558, 562 (5th Cir. 2017). In determining which test to use, the Fifth Circuit Court of Appeals stated that "government action that applies broadly gets rational basis; government action that is individualized to one or a few plaintiffs gets shocks the conscience." *Id.* Regardless of which test is used, the Court finds and concludes that Plaintiffs have failed to state claim against Defendants for violation of their Fourteenth Amendment right to substantive due process.

Amendment due process claim upon which relief can be granted and that Defendants' motions on this claim should be **GRANTED**.

I.  **HB 2127 Claim**

Many of Plaintiffs' claims rely on allegations that Defendant City of Jacksboro's ordinances regulating electrical licenses exceeded its authority to act based on the passage of Texas House Bill 2127, which Plaintiffs allege "allow Citizen[s] to seek relief from . . . governmental overreach." (Pls.' Sec. Am. Compl. at 3.) Specifically, Plaintiffs state:

> Effective September 1, 2023 the Texas Legislature protected the Citizen of municipalities that were passing municipal ordinances that exceeded Texas State law or failed to comply with state statutes passed House Bill 2127 (HB2127) so that Citizens of those municipality could seek relief in the courts. The City of Jacksboro has passed ordinances in violation of Texas State statutes. Some of the municipal ordinances that do not comply with Texas State statute are § 4.03.004 which fails to make electrical repairs **specifically** applicable to any person which is required in Texas OCC§ 1305.003(a)(6). Municipal ordinance § 4.03.004 also fails to **specifically** make any person in the "exempted class" in Texas OCC§ 1305.003(a)(6) applicable. The City also ignores the exemption it placed in municipal ordinance § 4.03.012 for any person exempted under Texas OCC§ 1305.003(a)(6). HB 2127 allows the Plaintiffs to seek relief in the courts over these failures.

(Pls.' Sec. Am. Compl. at 3-4 (mistakes in original).) Plaintiffs further claim:

> The Plaintiffs claim a right to seek relief under HB 2127 which became effective September 1, 2023. The City of Jacksboro has passed ordinances that do not comply with Texas State statutes. HB 2127 was passed to empower Citizens to challenge local ordinances pre-empted by state law and allows Citizens to file suit against those municipalities. HB2127 became effective in Texas September 1, 2023 which allows this action against The City for failing to comply with Texas State statutes and exceeding its authority under those statutes because in doing so the City violated the civil and Constitutional rights of the Plaintiffs.

(*Id.* at 9-10.)

"Traditionally Texas cities had the ability to enact local ordinances to regulate areas such as labor, agriculture, finance, insurance, natural resources, and occupations within their

respective jurisdictions." Melissa J. Ackie, Michael P. Royal, and Scott McDonald, *Texas Governor Signs Preemption Bill, Crown Act, and Other Legislation into Law—Expert Guidance*, HR Compl. 5308537 (Aug. 18, 2023). However, effective September 1, 2023, the 88th Texas Legislature adopted HB 2127, which as known at the "Texas Regulatory Consistency Act" or the "Death Star law." HB 2127 "seeks to end the patchwork of regulations that apply inconsistently across the state and return commercial regulatory authority to the state by prohibiting cities and counties from enacting any law" in nine areas, including the occupations code, that exceeds or conflicts with state law. *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 102A.002. The Act waives governmental immunity of a municipality to suit and "creates a private right of action for any individual or entity who sustained an injury in fact, actual or threatened, from a municipal or county ordinance, order, or rule adopted or enforced by a municipality in violation of the Texas Labor Code." *Id.*; *see* Tex. Civ. Prac. & Rem. Code §§ 102A.002, 102A.004. Damages, however, are limited to declaratory and injunctive relief and costs and reasonable attorney's fees. Tex. Civ. Prac. & Rem. Code § 102A.003. The Act also states:

> A municipality . . . is entitled to receive notice of a claim against it under this chapter not later than three months before the date a claimant files an action under this chapter. The notice must reasonably describe:
>
> > (1) the injury claimed; and
> > (2) the ordinance, order, or rule that is the cause of the injury.

Tex. Civ. Prac. & Rem. Code § 102A.005.

However, on August 30, 2023, Texas Judge Maya Guerra Gamble of the 49th District Court in Travis County declared HB 2127 "unconstitutional—facially, and as applied to Houston as a constitutional home rule city and to local law that are not already preempted under article XI, section 5 of the Texas Constitution—because, in the absence of a severability clause, no

provision can be given effect without the invalid provisions and application. *See City of Hous. v. State of Texas*, No. D-1-GN-23-003474, 2023 WL 5618634, at *1 (345th Dist. Ct., Travis County, Tex. Aug. 30, 2023). According to the Office of the Attorney General of Texas, this ruling has been appealed on behalf of the named defendants, which automatically stay's the effect of the court's declaration pending appeal. Press Release, Texas Law Enabling Citizens to Sue Over Local Ordinances Pre-Empted by State Laws Takes Effect, Texas Attorney General (Sept. 1, 2023) (citing Tex. R. App. Proc. 24.2(a)(3), 25.1(h)(2); Tex. Civ. Prac. And Rem. Code § 6.001).

   While the current status of the legality of Texas Regulatory Consistency Act is uncertain, it is clear that Plaintiffs, at the very least, have failed to comply with section 102A.005 of the Act, which requires that they provide notice of their claim to the City of Jacksboro not less than three months prior to filing such claim. Pursuant to Texas Government Code § 311.034, "Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." Tex. Gov't Code § 311.034; *see* Tex. Gov't Code § 311.002 (stating that this chapter applies to, *inter alia*, each code, amendment, repeal, revision, and reenactment of a code or code provision enacted by the 60th or a subsequent legislature as part of the state's continuing statutory revision program); Tex. Occupations Code § 1.002 (stating that "Chapter 311, Government Code . . . applies to the construction of each provision in this code except as otherwise expressly provided by this code"). Thus, because Plaintiffs have made no allegations that they complied with the required notice provisions of this newly passed law, the Court finds and concludes that it, at the very least, lacks jurisdiction to hear Plaintiffs' claim regarding HB 2127 because of Plaintiffs' failure to comply with such

24

provisions.[10]  Consequently, Defendants' motions to dismiss on this issue should be **GRANTED**
and this claim should be **DISMISSED WITHOUT PREJUDICE.**[11]

### J.    Punitive Damages

While Plaintiffs requested punitive damages in their Original Complaint, they appear to
have dropped such request in their Second Amended Complaint as they state they are seeking
"two million dollars ($2,000,000.00) in compensatory damages." (Pls.' Sec. Am. Compl. at 20.)
Nevertheless, because the Court finds and concludes that all of Plaintiffs' claims against
Defendants should be dismissed, the Court need not address this issue as punitive damages are
not an independent cause of action and are only available when a plaintiff establishes actual
damages. *Hancock v. Variyam*, 400 S.W.3d 59, 71 (Tex. 2013).[12]

### K.    Defendant Smith and Qualified Immunity

Defendant Smith, in his motion to dismiss, claims that he is entitled to qualified
immunity against all claims asserted against him by Plaintiffs. (Defendant Smith's Motion to
Dismiss ("Def. Smith's Mot.") at 7-22.)    "The doctrine of qualified immunity protects
government officials from suit and liability for civil damages under § 1983 insofar as their
conduct does not violate clearly established statutory or constitutional rights of which a
reasonable person would have known." *Byers v. Navarro Cnty.*, No. 3:09-CV-1792-D, 2012 WL

---

[10] While it does not appear that Plaintiffs are asserting a claim against Defendant Smith under this theory,
to the extent that they are, HB 2127 does not appear to authorize such a suit. Even if HB 2127 did authorize a suit,
Plaintiffs also failed to provide proper notice to Defendant Smith of such suit.

[11] "The Fifth Circuit has . . . made clear . . . that a dismissal for lack of subject matter jurisdiction must be
made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

[12] In addition, as to Defendant City of Jacksboro, the Court notes that punitive damages under section 1983
are not recoverable against a municipal defendant or a municipal official acting in his official capacity. *See Dugas
v. City of Ville Platte*, No. 6:17-cv-00337, 2017 WL 4248091, at *2-3 (W.D. La. Aug. 28, 2017); *Cox v. City of
Jackson*, 343 F. Supp. 2d 546, 578 (S.D. Miss. June 18, 2004).

677203, at *2 (N.D. Tex. Mar. 1, 2012) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  This is an affirmative defense that balances the important interests of holding "public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.  The Court must rule on the issue of qualified immunity "at the earliest possible stage of the litigation," because qualified immunity is more than a mere defense to liability.  *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022).  The rationale behind the Court's early determination is to prevent the defendant asserting qualified immunity from being deprived of his entitlement "to be free from suit and the burden of avoidable pretrial matters." *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986); *Carswell*, 27 F.4th at 1065.

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  "When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to negate the defense once it is properly raised." *Cano v. Vickery*, No. H-16-392, 2018 WL 4567169, at *3 (S.D. Tex. Sept. 24, 2018).  The Supreme Court has developed a two-step inquiry for resolving government officials' qualified immunity claims: (1) whether the facts that the plaintiff has **alleged** (at the motion-to-dismiss stage) or **shown** (at the summary-judgment stage) make out a violation of a constitutional or statutory right; and (2) whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Although the Supreme Court previously mandated that the two steps be resolved in sequence, in *Pearson v. Callahan*, it gave the lower courts permission to use discretion in deciding which of the two prongs to address first in light of the circumstances of the

26

particular case. *Pearson,* 555 U.S. at 236 (rejecting the prior holding in *Saucier v. Katz* that the analysis was a mandatory two-step sequence); *see also Lytle v. Bexar Cnty., Tex.,* 560 F.3d 404, 409 (5th Cir. 2009).

In conducting the inquiry under the first prong—whether the Plaintiff has alleged or shown a violation of a constitutional right—the Court is to "employ currently applicable constitutional standards." *Kinney v. Weaver,* 367 F.3d 337, 350 (5th Cir. 2004) (en banc). In resolving the second prong—whether the right allegedly violated is "clearly established"—the contours of the right must be "clearly established" in a particularized sense to the context of the case, so that a reasonable official could be expected to understand that what he is doing violates that right.[13] *See Baldwin v. Dorsey,* 964 F.3d 320, 326 (5th Cir. 2020) (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."[14] *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

In this case, as set forth above, Plaintiffs have failed to allege a violation of a constitutional or statutory right. Thus, the Court finds and concludes that Defendant Smith is entitled to qualified immunity. Moreover, even if Defendant Smith's conduct was somehow constitutionally infirm, he is still entitled to qualified immunity unless Plaintiffs can identify binding precedent that "placed the statutory or constitutional question beyond debate," so that

---

[13] "This prong is comprised of two separate, but related, inquiries: whether the allegedly violated constitutional rights were *clearly established at the time of the incident;* and, if so, whether the defendant's conduct was *objectively reasonable* in the light of that then clearly established law." *Backe v. City of Galveston, Tex.,* No. 10-CV-388, 2014 WL 794025, at *4 (S.D. Tex. Feb. 27, 2014) (internal quotation marks and citations omitted).

[14] "Objective reasonableness is a matter of law for the Court to decide." *See Goodson,* 202 F.3d at 736.

"every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citations and internal quotation marks omitted). In this case, there is an absence of any controlling case that the Court can locate, or that has been pointed out by Plaintiffs, showing that the law was so clearly established in September 2023 that a reasonable official could be expected to understand that what he is doing violated any constitutional or statutory right under the facts alleged by Plaintiffs. Consequently, the Court also finds and concludes that Plaintiffs have failed to properly allege that Defendant Smith violated a clearly established right.

Based on the foregoing, the Court finds and concludes that Defendant Smith has properly raised the defense of qualified immunity and that Plaintiffs have failed to overcome it and that Defendant's Smith motion on this issue should be **GRANTED**.

### L.    Pro Se Parties and Right to Amend

On a motion to dismiss for failure to state a claim, a "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his or her complaint before it is dismissed. *See Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See Clements v. Bank*, No. 6:20-CV-00821, 2021 WL 4483829, at *3 (W.D. La. Sept. 29, 2021) ("Since [Plaintiff] has previously

28

been granted leave to amend his complaint to cure these defects, the Court concludes that any further attempt to an amendment would be futile.")

In the present case, Plaintiffs have already been granted leave to file **two** Amended Complaints. Accordingly, the Court finds and concludes that the granting of any additional leave for Plaintiffs to amend their claims would be futile.

### RECOMMENDATION

For the reasons set out above, the Court **RECOMMENDS** that Defendant Smith's Motion to Dismiss Second Amended Complaint [doc. 41] be **GRANTED** and Defendant City of Jacksboro's Motion to Dismiss Second Amended Complaint [doc. 42] be **GRANTED**.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 15, 2024,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed, and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusion, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED May 1, 2024.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE