UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**SHERRY J. RUPE, ET AL.,**

   Plaintiffs,

v.                                    **No. 4:23-cv-00998-P**

**THE CITY OF JACKSBORO, TEXAS,
ET AL.,**

   Defendants.

### ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The United States Magistrate Judge issued findings, conclusions, and a recommendation ("FCR") for this case on May 1, 2024. *See* ECF No. 47. Plaintiffs objected (ECF No. 48), so the Court conducted a *de novo* review. Having done so, the Court **ACCEPTS** the Magistrate Judge's recommendation and **OVERRULES** Plaintiffs' objections. Accordingly, the Court **DISMISSES** this lawsuit for the reasons below.

### BACKGROUND

Like many homeowning couples, Johnny and Sherry Rupe have a long honey-do list. Johnny tried to shorten his list last September when he cut down a large limb on the Rupe's property. The limb, like fallen arboreal appendages before it, obeyed Newton's law. It fell on a low-hanging power line servicing the Rupe's residence. Chaos ensued. Fortunately, neither the Rupes nor their residence were damaged when the downed line emitted huge arcs of electricity. Unfortunately, the damaged line stopped powering the Rupe's home, including an all-important air conditioning unit. Mr. Rupe then did what most folks with the requisite know-how might do: he "repaired the damage and requested [electricity provider] Oncor return service to their residence."

One can imagine Mr. Rupe's surprise to find out Oncor could not return electricity to the property, owing to a contract the company maintains with the City of Jacksboro. With Oncor's hands tied, Johnny and Sherry were forced to spend a sweltering weekend without electricity in their home. To make matters worse, Jacksboro then informed Mr. Rupe that his DIY electric work was illegal—as Jacksboro ordinances prohibit electric work by unlicensed persons within city limits. The Rupes sued the City of Jacksboro and its City Manager last October, seeking damages allegedly arising from the incident.

As the Rupes see things, it's self-evident that a homeowner has the right to make repairs on his or her own property. Accordingly, the Rupes filed a *pro se* complaint, which the Court construes as alleging the following causes of action: (1) elderly abuse in violation of Texas Human Resources Code § 102.003(b)(2) and 42 U.S.C. § 3058i; (2) violations of the Eighth Amendment's prohibition of cruel and unusual punishment; (3) various violations of the Ninth and Tenth Amendments; (4) fraud, blackmail, and extortion; (5) municipal liability against Jacksboro regarding impermissibly vague ordinances; (6) violations of the Rupes' right to contract; (7) due process violations under the Fifth and Fourteenth Amendments; and (8) violations of Texas House Bill ("H.B.") 2127, effective as of September 1, 2023. Defendants moved to dismiss the Rupe's lawsuit earlier this year. The Magistrate Judge made findings regarding Defendants' motion in May, which are now ripe for review. Having reviewed the pleadings, record, and FCR *de novo*, the Court adopts the FCR as the findings and conclusions of the Court.

## LEGAL STANDARD

A federal-court complaint must contain "a short and plain statement of the claim" that shows "the pleader is entitled to relief." FED. R. CIV. P. 8. If it doesn't, the Court may dismiss the complaint under Rule 12. *See* FED. R. CIV. P. 12(b)(6). Complaints fail to state a claim on which relief can be granted if they "lack[ ] an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An arguable basis in fact means the complaint has "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A case lacks an arguable basis in law if it's "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

At the pleadings stage, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). This is even truer for *pro se* litigants like the Rupes. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That's because "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (cleaned up). But the Court's interpretive leniency doesn't apply to legal conclusions, which the Court will not presume to be true. *Iqbal*, 556 U.S. at 678–79.

## ANALYSIS OF FCR & OBJECTIONS

The Magistrate Judge applied correct legal frameworks to the Rupes' claims and the Court wholly adopts the FCR's analysis herein. *See* ECF No. 47. As a preliminary matter, the Rupes lack a cognizable claim against Defendant Smith, Jacksboro's City Manager. Review of the pleadings suggest the Rupes only sue Smith in his personal capacity. *See* ECF No. 38. To the extent the Rupes intended to sue Smith in his official capacity vis-à-vis the allegations in the Complaint, those claims would be duplicative of the Rupes' claims against the city itself. *See* ECF No. 47 at 6. Accordingly, any such claims would properly be dismissed. *Id.*; *see also Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was . . . correct in dismissing the allegations against all of the municipal officers and two of the employees of the Corps of Engineers in their official capacities, as these allegations are duplicate claims against the respective governmental entities themselves."). Further, the FCR correctly concluded that Smith is entitled to qualified immunity. *See* ECF No. 47 at 25–28. The Rupes do not object to the FCR's qualified-immunity analysis under *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, the Court **ADOPTS** the FCR's qualified-

immunity analysis and **DISMISSES** the Rupes' claims against Smith. The Court now turns to their claims against the City of Jacksboro.

1. <u>The Rupes' Elder Abuse Claims Should be Dismissed.</u>

As noted, the Rupes assert claims for elder abuse under 42 U.S.C. § 3058i and Texas Human Resources Code § 102.003(b)(2). *See* ECF No. 1. The FCR concluded the Rupes' claims under 42 U.S.C. § 3058i should be dismissed because the Older Americans Act does not create a private cause of action. *See* ECF No. 47 at 6–7 (collecting cases). Likewise, the FCR concluded the Rupes have no cognizable claim under Texas Human Resources Code § 102.003(b)(2) because the relevant statute applies to individuals or entities "providing convalescent and nursing home services, home health services, or alternate care services." *See* ECF No. 47 at 8 (citing TEX. HUM. RES. CODE ANN. § 102.001(4)). Both conclusions are correct. The Rupes did not contest the FCR's application of law to the fact of their case for these claims, so the Court **ADOPTS** the FCR's analysis and **DISMISSES** the Rupes' elder abuse claims.

2. <u>The Rupes' Eighth, Ninth, and Tenth Amendment Claim Should be Dismissed.</u>

The Rupes further suggest Jacksboro violated several constitutional rights in responding to the incident at the Rupes' property. *See* ECF No. 38. As the FCR correctly noted, the Rupes' Ninth and Tenth Amendment claims should be dismissed because those Amendments don't confer substantive rights or create a private cause of action. *See* ECF No. 47 at 8–9. Turning to the only constitutional claim that does, the Rupes say Jacksboro violated their Eighth Amendments rights by "failing to allow access to utilities until arbitrary conditions are met by the citizens in times of an emergency without any immediate remedy." ECF No. 38 at 8. But the FCR rightly noted that the Eighth Amendment's prohibition against cruel and unusual punishment applies to individuals in the State's custody. *See* ECF No. 47 at 8 (collecting cases); *see generally Lynch v. Cannatella*, 810 F.2d 1363, 1375 (5th Cir. 1987). The Rupes concede that they weren't locked up during their ordeal, so the Court **ADOPTS** the FCR's analysis and **DISMISSES** the Rupes' claims under the Eighth, Ninth, and Tenth Amendments.

4

3. The Rupes' Fraud, Blackmail, and Extortion Claims Should be Dismissed.

The FCR also rightly recommended dismissal of the Rupes' claims for fraud, blackmail, and extortion. *See* ECF No. 47 at 9. While fraud, blackmail, and extortion represent the triumvirate of tort claims brought against entities in similar circumstances, the Rupes fail to establish the prima facie elements of any such tort. The Rupes allege the City committed these torts by making them "buy[] a permit through a licensed master electrician to have an inspection in order for the City to contact Oncor to connect the power." ECF No. 38 at 20. While there's room to debate that approach as a matter of policy, bad public policies are a far cry from actionable fraud, blackmail, or extortion. *See* ECF No. 47 at 9–11. The Rupes do not object to a specific conclusion the FCR made for these claims, so the Court **ADOPTS** the FCR's recommendation and **DISMISSES** the Rupes' claims for fraud, blackmail, and extortion.

4. The Rupes' Due Process and § 1983 Claims Should be Dismissed.

Turning to the Rupes' § 1983 claims against Jacksboro, a clarifying remark is in order. The pleadings attempt to articulate municipal liability claims against Jacksboro while separately alleging independent Fifth and Fourteenth Amendment claims. But § 1983 is the statutory vehicle to lodge constitutional grievances like those at issue here. *See* 42 U.S.C. § 1983 (creating cause of action against persons acting "under color of any statute, ordinance, regulation, custom, or usage" for "the deprivation of any rights, privileges, and immunities secured by the Constitution and laws"). And the Rupes' ostensibly independent due-process claims rely upon a preliminary finding vis-à-vis the § 1983 claims. *See* ECF No. 38. The Court thus addresses these independently pleaded claims in tandem.

At base, the Rupes assert due process claims under the Fifth and Fourteenth Amendments based on their forced compliance with impermissibly vague city ordinances. *See id.* The FCR is correct that the Fifth Amendment, which applies only to federal governmental entities, is not at play here. *See* ECF No. 47 at 19; *see generally Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996) ("[T]he Fifth Amendment applies only

5

to the actions of federal government, and not to the actions of a municipal government as in the present case."). But the Rupes have a potential Fourteenth Amendment claim, as the Fourteenth Amendment says no state shall "deprive a person of life, liberty, or property without due process of law." U.S. CONST., amend. XIV.

The Court departs from the FCR's analysis on this granular point, as the Magistrate Judge concluded "Plaintiffs have failed to allege a life, liberty, or property interest to which the Fourteenth Amendment's due process protection applies." ECF No. 47 at 21. True, "[t]o prevail on a substantive due process claim, [the Rupes] must first establish that [they] held a constitutionally protected [] right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 249–50 (5th Cir. 2000). But "[v]agueness doctrine is an outgrowth . . . of the Due Process Clause." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."). Thus, the issue isn't that the Rupes fail to allege a protected interest—but that, as the FCR concluded, the contested ordinances did not violate such interest. The Court now turns to the viability of the Rupes' underlying void-for-vagueness claim.

The Rupes make a compelling case that Jacksboro's ordinances are poorly drafted. *See* ECF No. 38. And this isn't a geographically constrained phenomenon: the modern surge in administrative regulations across federal, state, and local governments has gifted the governed with a daunting gauntlet of legal obligations. Nevertheless, vagueness precedents don't render an ordinance unconstitutional because it's relatively opaque. Rather, "[a] statute is unconstitutionally vague if it does not give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Groome Res., Ltd. v. Parish of Jefferson*, 234 F.3d 192, 217 (5th Cir. 2000) (cleaned up). Thus, to prevail on their claim, the Rupes must establish that the contested ordinances are so vague an average Joe wouldn't understand what they prohibit.

The FCR correctly analyzed the Rupes' § 1983 claims under the framework set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)

6

and its progeny. With respect to the challenged ordinances, the Rupes must establish an "official policy," which is a law "that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *Brown v. Bryan Cnty., Ok.*, 219 F.3d 450, 457 (5th Cir. 2000). If they do, they must then connect that official policy to the constitutional violation asserted. *See id.*

Here, the Rupes challenge Jacksboro's ordinances governing who can perform electric work in city limits without licensure. ECF No. 38. Subject to certain exceptions, Texas law answers this question. *See* TEX. OCC. CODE ANN. § 1305.151. One exception is for homeowners like Mr. Rupe. *See id.* § 1305.003(a)(6) (exempting from the licensure requirement "work not specifically regulated by a municipal ordinance that is performed in or on a dwelling by a person who owns and resides in the dwelling"). While Mr. Rupe performed the challenged work at his home, the City argues such work was "specifically regulated by a municipal ordinance." Indeed, Mr. Rupe seemed to violate clear city ordinances prohibiting unlicensed electric work on "electric wiring hereafter installed in the city." *See generally* CITY OF JACKSBORO MUNICIPAL ORDINANCES, Ch. 4, § 4.03.004, 012.

But the Rupes point to a caveat in the municipal code that prohibits such work "unless the [governed] person holds the appropriate license and is not otherwise exempted under state law." *See* CITY OF JACKSBORO MUNICIPAL ORDINANCES, Ch. 4, § 4.03.012. As the Rupes see things, Jacksboro "failed to acknowledge the Plaintiffs are exempted people under Texas Occupations Code § 1305.003(a)(6) and City of Jacksboro municipal ordinance § 4.03.012(a)." ECF No. 38 at 13. The Court agrees with the FCR that Mr. Rupe was not exempted under the Texas Occupations Code, as § 1305.003(a)(6) only applies where the work is not "specifically regulated by a municipal ordinance." *See* ECF No. 47 at 15. Nothing is ambiguous about that caveat, and Jacksboro "specifically regulated" work on electric wires installed in the city. Thus, Mr. Rupe finds no safe harbor in the Occupations Code.

Looking to the city ordinances themselves, while the draftsmanship leaves much to be desired, the ordinances require licensure "unless the

7

[governed] person holds the appropriate license and is not otherwise exempted under state law." *See* CITY OF JACKSBORO MUNICIPAL ORDINANCES, Ch. 4, § 4.03.012. So the Rupes were sent in a regulatory circle: Texas law exempts homeowners like Mr. Rupe *unless* a municipality specifically governs the topic. *See* TEX. OCC. CODE ANN. § 1305.003(a)(6). Jacksboro does, and its ordinances prohibit the work Mr. Rupe performed *unless* Mr. Rupe was otherwise exempted by the Occupations Code. *See* CITY OF JACKSBORO MUNICIPAL ORDINANCES, Ch. 4, § 4.03.012. But the Occupation Code doesn't help Mr. Rupe, as the relevant exemption only applies to "work not specifically regulated by a municipal ordinance." TEX. OCC. CODE ANN. § 1305.003(a)(6). Thus, because Jacksboro specifically regulated the electric work Rupe performed, § 1305.003(a)(6) does not apply.

At this stage, the Court must draw all reasonable inferences in the Rupes' favor. *Sonnier*, 509 F.3d at 675. And while the Court sympathizes with their plight, the challenged ordinances provide a person of "ordinary intelligence" with "a reasonable opportunity to know what is prohibited." *Groome*, 234 F.3d at 217. To be sure, modern regulatory schemes are increasingly unfriendly to the very laypersons they govern. One could certainly critique a system that forces average Americans like Mr. Rupe to consult cross-referenced regulations promulgated by both municipal and state authorities. But as well discussed in the FCR, the cross-referenced laws at issue here are not unconstitutionally vague. *See* ECF No. 47 at 11–16. On this point, the Court **OVERRULES** the Rupes' objection that "the Court did not address [the question of] who are the people or is the person that 'is not otherwise exempted under state law.'" ECF No. 48 at 3. The FCR addressed this precise point, and as discussed above, the referenced exemption is inapplicable to Mr. Rupe because the Occupation Code punts authority to controlling municipal regulations. Accordingly, the Court **DISMISSES** the Rupes' due process and municipal liability claims.

5. The Rupes' Right-to-Contract Claim Should be Dismissed.

The Rupes further contend that Jacksboro violated their right to contract "by forcing [them] into a contract with Oncor to obtain both a permit and an inspection from The City." ECF No. 38 at 8–9. On this,

8

the Court agrees with the Rupes that "[o]ne of the most important concepts used during the ascendancy of economic due process was the liberty of contract." *Id.* However, as acknowledged in the FCR, the right to contract has always been "subject to certain limitations which the state may lawfully impose in the exercise of its police powers." *Holden v. Hardy*, 169 U.S. 366, 391 (1898). Relevant here, you don't have a right to contract in violation of valid municipal ordinances. *See* ECF No. 47 at 17–19 (collecting cases). And as noted above, Jacksboro's ordinance requiring licensure to perform electric work in the city is valid. The Rupes don't object to the FCR's analysis vis-à-vis their right-to-contract claim, but merely to the FCR's underlying analysis regarding the ordinance's legality. *See* ECF No. 48 at 4–5. Accordingly, the Court **ADOPTS** the FCR's analysis on this point and **DISMISSES** the Rupes' right-to-contract claim.

6. <u>The Rupes' Claim Under H.B. 2127 Should be Dismissed.</u>

Turning to the Rupes' final cause of action, the Rupes attempt to sue Jacksboro under H.B. 2127—the recently enacted "Texas Regulatory Consistency Act." *See* ECF No. 38. However, as the FCR rightly noted, the Rupes were required to give Jacksboro at least three months' advance notice before suing under H.B. 2127. *See* ECF No. 47 at 24. They didn't, and their failure deprives this Court of jurisdiction over the claim. *See* TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."). As the Rupes do not contest their failure to provide such notice, the Court **ACCEPTS** the FCR's analysis and **DISMISSES** the Rupes' claim under H.B. 2127.

## CONCLUSION

For the above reasons, the Court **ACCEPTS** the findings and conclusions in the Magistrate Judge's FCR and **DISMISSES** this lawsuit. The Court agrees with the FCR that further amendments would be futile given the Rupes' current amendments and the legal infertility of their proffered theories. *See* ECF No. 47 at 28–29. Accordingly, excepting the Rupes' claims under H.B. 2127, the Rupes' claims in this lawsuit are **DISMISSED with prejudice**. Their claims under H.B.

9

2127 are not per se meritless; the Rupes simply failed to provide advance notice before suing. As such, the Rupes' claims under H.B. 2127 are **DISMISSED without prejudice**.

**SO ORDERED** on this **25th day** of **July 2024.**

*[signature: Mark T. Pittman]*

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE